# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSHUA LEE STIEFERMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-22-1073-AMG |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Joshua Lee Stieferman ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. (Doc. 1). The Commissioner has filed the Administrative Record ("AR") (Doc. 7), and the parties have fully briefed the issues (Docs. 9, 15).[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 10, 11). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

I.       **The Disability Standard and Standard of Review**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. § 404.1521; *see* 20 C.F.R. §§ 404.1502(a), 404.1513(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment

or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[2] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id*. "The claimant is entitled to disability benefits only if [Claimant] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*,

---

[2] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a).

139 S.Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Procedural History

Plaintiff filed an application for DIB on May 6, 2020, alleging a disability onset date of September 1, 2019. (AR, at 57). The SSA denied the applications initially and on reconsideration. (*Id*. at 56-65, 68-78). Then an administrative hearing was held on June 21, 2022. (*Id*. at 32-55). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id*. at 9-31). The Appeals Council subsequently denied Plaintiff's request for review. (*Id*. at 1-6). Thus, the ALJ's decision became the final decision of the Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

**III.     The Administrative Decision**

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2019, the alleged onset date. (AR, at 15). At Step Two, the ALJ found that Plaintiff had the following severe impairments: "cerebrovascular accident (CVA), obesity, major depressive disorder (MDD), and generalized anxiety disorder (GAD)." (*Id*.) At Step Three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*. at 17). The ALJ then determined that Plaintiff had the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) except he can never climb ladders, ropes, or scaffolds, he can never operate a motor vehicle for work related tasks, and he can have no exposure to unprotected heights or moving mechanical parts. The claimant can make simple work related decisions and adapt to occasional changes in the work routine, and he can perform simple, routine tasks, but not at a production rate pace.

(*Id*. at 19). Then, at Step Four, the ALJ concluded that Plaintiff was unable to perform any of his past relevant work. (*Id*. at 25). At Step Five, however, the ALJ found when "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform" such as a dishwasher, a sandwich maker, and a hand packager. (*Id*. at 25-26). Thus, the ALJ found that Plaintiff had not been under a disability since September 1, 2019. (*Id*. at 26).

IV.     **Claims Presented for Judicial Review**

On appeal, Plaintiff raises one issue, that "[t]he ALJ failed to appropriately evaluate [Plaintiff's] statements regarding his anxiety symptoms of panic attacks and social limitations," and as a result, the ALJ's RFC is unsupported by substantial evidence. (Doc. 9, at 7). In response, the Commissioner argues that the RFC was supported by substantial evidence, "balanc[ing] Plaintiff's subjective complaints . . . with countervailing evidence, including the predominately normal findings from mental status examinations and the incongruencies between the few abnormal findings and Plaintiff's intense allegations," and that Plaintiff now impermissibly "ask[s] the court to reweigh the evidence in his favor." (Doc. 15, at 6-7).

V.      **The ALJ's Formulation of the RFC With Regard To Plaintiff's Mental Impairments Is Supported By Substantial Evidence.**

The ALJ considered Plaintiff's entire record and found that Plaintiff has severe mental impairments of "major depressive disorder (MDD), and generalized anxiety disorder (GAD)." (AR, at 15). She considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders, the "paragraph B criteria," and determined that Plaintiff has moderate limitations in understanding, remembering, or applying information; in concentrating, persisting, or maintaining pace; and in adapting or managing oneself; and a mild limitation in interacting with others. (*Id*. at 18-19). The ALJ reasoned:

> the lack of "sustained" findings and the overall tone of the objective findings in this case both weigh heavily against a marked finding in any of these functional areas, much less an extreme finding. Indeed, the findings regarding the claimant's calm, cooperative demeanor and his overall normal

> interactions with his providers provide little support for his rather intense testimony regarding his social anxiety, which led me to find that he has no more than mild limitations in interacting with others.

(*Id*. at 18-19) (citing AR, at 302-440, 691, 887-1228).  Likewise, the ALJ considered the "paragraph C" criteria used to evaluate serious and persistent mental disorders, and found they were not satisfied because "there is insufficient documentation to establish that the claimant has minimal adaptive capacity." (*Id*. at 19).

In formulating the RFC, the ALJ considered the testimony of Plaintiff at his hearing regarding severe anxiety and panic attacks, including that his "main barrier to his ability to work was his anxiety, and in particular, anxiety spells involving shortness of breath and dizziness to the point that he does not want to get out of bed, and lasting multiple days in some cases." (*Id*. at 20).  The ALJ also considered Plaintiff's testimony about his social anxiety, including that he is "unable to go into big stores like Walmart because there are too many people there," his concerns "about disappointing other people, and about feelings that other people are constantly looking over his shoulder and whispering about him." (*Id*.) However, "[a]fter careful consideration of the evidence," the ALJ went on to find that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of Plaintiff's symptoms, including his panic attacks and social anxiety, "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [her] decision." (*Id*. at 21).

The ALJ then extensively discussed the medical evidence pertaining to Plaintiff's mental health. (*Id*. at 22-23).  She accounted for Plaintiff's use of "medication to treat symptoms of anxiety and depression since 2018, when [Plaintiff] was prescribed a

combination Vistaril and Doxepin" and the subsequent adjustments to Plaintiff's medications and dosages. (*Id*. at 22-23) (citing AR, at 246, 262, 305, 313, 336, 396, 436-40). She considered Plaintiff's mental health assessments by medical providers between October 2019 and April 2022, comparing Plaintiff's varied but sometimes severe reports of symptoms at those visits with his presentation on examination, which largely showed a euthymic mood and normal mental functioning. (*Id*. at 22-23) (citing AR, at 302-05, 310-36, 349-52, 393-96, 402, 427, 436-40, 691, 887, 952-59, 1079-93, 1133-39, 1189-90, 1221-28).

After considering both the hearing testimony and the medical evidence, the ALJ concluded that:

> the objective findings regarding [Plaintiff's] mental status throughout the relevant period were largely normal despite consistent reports of anxiety attacks and periodic bouts of depression. In fact, he often appeared euthymic, with only a few instances of objectively confirmed anxiety demonstrated in the record, which provides little corroboration or support for his testimony about the intensity and frequency of his symptoms, and in particular, his panic attacks. On the other hand, the records do provide general support for [Plaintiff's] allegations about his anxiety being the biggest issue affecting his ability to work, so I find there is adequate cause to provide limitations intended to reduce the anxiety [Plaintiff] would experience in the workplace.
> . . .
>
> [Plaintiff's] testimony regarding his social anxiety, paranoia about other people watching him, and difficulty dealing with large stores does not find adequate subjective or objective support in the medical records, which generally show he was calm, cooperative, and euthymic, with no signs of paranoia or even complaints of problems getting along with or being around others. [Plaintiff's] testimony about the frequency and intensity of his anxiety attacks also fails to find adequate evidentiary support, as the record shows he generally reported good effects from his combined psychotropic medications and exhibited mostly normal mental functioning, including his mood.

8

(*Id.* at 23-24) (citing AR, at 295-684, 855-1428).

Plaintiff's sole argument is that "[t]he ALJ failed to appropriately evaluate [Plaintiff's] statements regarding his anxiety symptoms of panic attacks and social limitations," and therefore "assessed an RFC that accounted for some, but not all of [Plaintiff's] anxiety-related limitations," and that the ALJ should have adjusted the RFC to include "accommodation for interruptions in productivity secondary to panic attacks or limitations in interacting with others." (Doc. 9, at 7). But the ALJ did extensively consider Plaintiff's subjective complaints of symptoms, both through his hearing testimony and within the medical evidence, and found them unsupported, contrasting Plaintiff's allegations of disability with his largely normal findings upon examination. And the ALJ explicitly formulated the RFC to account for his workplace anxiety. Although Plaintiff concedes that the ALJ "provid[ed] an adequate summary of the evidence," (*id*. at 8), Plaintiff now asks the Court to reconsider this same evidence and reach a different conclusion. Plaintiff's request that the Court remand on that basis is nothing more than a request to reweigh the evidence, and this Court must decline that request. *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("Concluding otherwise would require us to reweigh the evidence, a task we may not perform."). "The ALJ was entitled to resolve [] evidentiary conflicts and did so." *Id*. Indeed,

> [t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*.

*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citations and quotation marks omitted).  The ALJ's RFC is supported by substantial evidence regarding Plaintiff's mental impairments.

## VI.     Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **AFFIRMS** the decision of the Commissioner for the reasons discussed above.

**SO ORDERED** this 1st day of August, 2023.

*[signature]*
AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE